# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**LEONARD WILSON**                                                                          **PLAINTIFF**

v.                                                                   **CIVIL ACTION NO. 2:19-CV-42-KS-MTP**

**CITY OF HATTIESBURG,** *et al.*                                                     **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

For the reasons provided below, the Court **grants in part and denies in part** Defendants' Motion to Dismiss [3]. Specifically, the Court grants the motion as to Plaintiff's failure-to-train and due process claims. The Court denies the motion in all other respects.

## I. BACKGROUND

This is a First Amendment retaliation case. Plaintiff was an employee in Hattiesburg, Mississippi's department of sanitation and public works. He witnessed a fellow employee, a truck driver, texting and driving. Plaintiff complained to his supervisor, Defendant Larry Barnes, but Barnes did nothing in response to his complaints. Wilson then filmed the truck driver texting and driving and showed the video to Barnes. Barnes allegedly became hostile toward Plaintiff, displeased that Plaintiff had made the video. After the City failed to respond to his complaints, Plaintiff released the video to the public, purportedly out of concern for public safety. Shortly thereafter, the City terminated Plaintiff's employment. Plaintiff filed this lawsuit, alleging that the City fired him in retaliation for the exercise of his First

Amendment rights, and that it deprived him of due process. Defendants filed a Motion to Dismiss [3], which the Court now considers.

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010) (punctuation omitted). "To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (punctuation omitted). The Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* But the Court will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* Likewise, "a formulaic recitation of the elements of a cause of action will not do." *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417 (5th Cir. 2010) (punctuation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

## III. DISCUSSION

### A. *Municipal Liability*

First, Defendants argue that Plaintiff did not plead sufficient facts to establish municipal liability under 42 U.S.C. § 1983. Specifically, Defendants contend that Plaintiff failed to plead specific facts showing that a city policy or custom was the

moving force behind the alleged constitutional violation.

The Fifth Circuit provided the following summary of the law concerning municipal liability under § 1983:

> A municipality is not liable under § 1983 on the theory of respondeat superior, but only for acts that are directly attributable to it through some official action or imprimatur. To hold a municipality liable under § 1983 for the misconduct of an employee, a plaintiff must show, in addition to a constitutional violation, that an official policy promulgated by the municipality's policymaker was the moving force behind, or actual cause of the constitutional injury. The official policy itself must be unconstitutional or, if not, must have been adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result.
>
> Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy. A policy is official only when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy.
>
> Although an official policy can render a municipality culpable, there can be no municipal liability unless it is the moving force behind the constitutional violation. In other words, a plaintiff must show direct causation, i.e., that there was a direct causal link between the policy and the violation.
>
> A plaintiff must show that, where the official policy itself is not facially unconstitutional, it was adopted with deliberate indifference as to its known or obvious consequences. Deliberate indifference is a degree of culpability beyond mere negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight.

*James v. Harris County*, 577 F.3d 612, 617-18 (5th Cir. 2009) (punctuation and citations omitted).

However, "[w]hen a municipality's final policy and decision maker in a single

action directly and intentionally deprives a person of a federal constitutional right, . . . the person need not show that a policy or custom caused his injury in order to recover. In such a case, the municipality's action is deemed to be the direct cause or moving force behind the deprivation of right and injury." *Coggin v. Longview Indep. Sch. Dist.*, 289 F.3d 326, 333 (5th Cir. 2002) (citing *Bd. of County Comm'ners v. Brown*, 520 U.S. 397, 402-04, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)). "To prove liability under the single-incident exception, a plaintiff must at least show (1) that the defendant acted with deliberate indifference by disregarding a known or obvious consequence of his action and (2) that there is a direct causal link between the defendant's action and the deprivation of federal rights." *Waltman v. Payne*, 535 F.3d 342, 350 (5th Cir. 2008). Therefore, a single action by one who establishes governmental policy is sufficient to impose municipal liability in certain circumstances. *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1997)).

Plaintiff alleged that Defendant Barnes made the decision to fire him, that Barnes had final policymaking authority over the personnel decisions in the sanitation and public works department, and that Barnes fired him in retaliation for his exercise of his First Amendment rights. These allegations are enough to state a plausible claim of municipal liability under the single-incident exception to the general rules regarding municipal liability under Section 1983.

4

## B. *Failure to Train*

Next, Defendants argue that Plaintiff alleged insufficient facts to support a failure-to-train claim under Section 1983. Specifically, Defendants argue that Plaintiff did not allege any specific deficiencies in the training Defendants offered employees. "To prevail on a failure to train theory, a plaintiff must demonstrate: (1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Westfall v. Luna*, 903 F.3d 534, 552 (5th Cir. 2018). The "plaintiff must allege with specificity how a particular training program is defective." *Id.*

Plaintiff only alleged that the City failed "to train its employees properly to prevent the violations of [his] rights." Exhibit A to Notice of Removal at 6, *Wilson v. Hattiesburg*, No. 2:19-CV-42-KS-MTP (S.D. Miss. Mar. 25, 2019), ECF No. 1-1. He did not identify a training program or specifically allege how any training program was deficient. This bare, conclusory allegation is not sufficient to state a failure-to-train claim.

## C. *First Amendment Retaliation*

Defendants argue that Plaintiff's First Amendment retaliation claim should be dismissed. "The First Amendment prohibits not only direct limits on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected speech activities." *McLin v. Ard*, 866 F.3d 682, 696 (5th Cir.

5

2017). To state a claim of First Amendment retaliation under Section 1983, Plaintiff must allege facts that demonstrate: "(1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016).

### 1. Protected Speech

First, Defendants argue that Plaintiff's complaints to his supervisors are not protected speech, and that the subject of Plaintiff's speech was not a matter of public concern. To determine whether speech addresses a matter of public concern, the Court must examine the "content, form, and context of a given statement, as revealed by the whole record." *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 186 (5th Cir. 2005). "[A] matter of public concern does not involve solely personal matters or strictly a discussion of management policies that is only interesting to the public by virtue of the manager's status as an arm of the government." *Id.* In other words, "if releasing the speech to the public would inform the populace of more than the fact of an employee's employment grievance, the content of the speech may be public in nature." *Id.* at 187. Therefore, "[w]hen a public employee speaks in his capacity as an employee and addresses personal matters such as personnel and employment disputes, rather than in his capacity as a citizen on a matter of public interest, his speech falls outside the protection of the First Amendment." *Id.* at 186.

6

Plaintiff alleges that he complained to his supervisor about a fellow employee texting while driving a City vehicle. That goes beyond a "personal employer-employee dispute," *id.* at 187, or "internal expressions of concern or complaint about the operation" of the department. *Marceaux v. Lafayette City-Parish Consol. Gov't*, 614 F. App'x 705, 710 (5th Cir. 2015). First, the context of the speech weighs in Plaintiff's favor. Mobile devices are ubiquitous in today's society, and their use by motorists is a frequent subject of public discussion. In fact, in recent history, Mississippi passed a traffic regulation to specifically address texting while driving. *See* MISS. CODE ANN. § 63-33-1(2). Although Plaintiff lodged a complaint with his supervisor, he was not speaking on a purely personal employment matter. Rather, he addressed an issue of frequent discussion in the public square. Also, his speech was not pursuant to the duties of his employment. *Hays v. Laforge*, 113 F. Supp. 3d 883, 896 (5th Cir. 2015).

Likewise, the content of the speech weighs in Plaintiff's favor. A public employee texting while driving is endangering the lives and property of anyone using the public motorways, and the Fifth Circuit has repeatedly held that misconduct by public employees is a matter of public concern. *See, e.g. Teague v. City of Flower Mound, Tex.*, 179 F.3d 377, 381 (5th Cir. 1999); *Wilson v. UT Health Ctr.*, 973 F.2d 1263, 1269-70 (5th Cir. 1992); *Brawner v. City of Richardson*, 855 F.2d 187, 191-92 (5th Cir. 1988). While use of a mobile device while driving may not be as egregious as sexual harassment, racial discrimination, or other "hot button" cases of public official misconduct, it is no less a matter of public concern. *Salge*, 411 F.3d at 191.

7

In the end, the form of Plaintiff's speech is the only factor that arguably weighs against him. Rather than immediately take his complaints to the public, he lodged a complaint with his supervisor. The Court will assume, without deciding, that the form of Plaintiff's speech weighs against him – at least with respect to the internal complaints to his supervisor, if not the publication of the video.

In the Court's opinion, the content and context of Plaintiff's speech clearly demonstrate that he spoke on a matter of public concern. Even if the form of speech – a complaint to his supervisor – weighs against him, the content and context of his speech outweigh that factor. For these reasons, the Court concludes that Plaintiff's complaints to his supervisors about a fellow employee texting while driving were protected speech on a matter of public concern.

2. *Causation*

Next, Defendants argue that Plaintiff did not plead facts demonstrating that their actions were because of his speech. To establish causation, Plaintiff must prove that his protected conduct "was a motivating factor in" Defendants' termination of his employment. *Dearman v. Stone County Sch. Dist.*, 832 F.3d 577, 581 (5th Cir. 2016). Here, Plaintiff alleged that his supervisor became hostile toward him after he recorded another employee texting and driving. Exhibit A [1-1], at 3. Plaintiff also alleged that although he was unaware of any issues with his job performance, Defendants fired him "shortly after" he complained about the texting and driving and published the video. *Id.* at 4. These allegations are sufficient to state a claim that

8

Plaintiff's complaint to his supervisor was a "motivating factor" in his termination. *Dearman*, 832 F.3d at 581. "[C]lose timing between an employee protected activity and an adverse employment action can be a sufficient basis for a court to find a causal connection required to make out a prima facie case of retaliation . . . ." *Cripps v. La. Dep't of Agriculture and Forestry*, 819 F.3d 221, 230 (5th Cir. 2016); *see also Mooney v. Lafayette Cnty. Sch. Dist.*, 538 F. App'x 447, 454 (5th Cir. 1992).

Defendants also argue that Plaintiff did not allege that they knew that he had published the video. Defendant is correct. In fact, Plaintiff admits in briefing that he does not know whether Defendants knew that he had published the video before they fired him. Plaintiff argues, though, the temporal proximity of events is sufficient to plead causation at this stage of the proceedings. The Court agrees with Plaintiff. As noted above, "close timing between an employee protected activity and an adverse employment action can be a sufficient basis for a court to find a causal connection required to make out a prima facie case of retaliation . . . ." *Id.* Plaintiff pleaded facts indicating temporal proximity between his protected activity and termination, and he alleged that his supervisor became hostile toward him after he recorded the other employee's misconduct. Exhibit A [1-1], at 3. In the Court's opinion, that is enough to state a plausible causative relationship at the pleading stage.

### D.     *Substantive Due Process*

Finally, Defendants argue Plaintiff did not plead any facts which are shocking enough to state a substantive due process claim. "Substantive due process bars

9

certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Lewis v. Univ. of Tex. Med. Branch*, 665 F.3d 625, 630 (5th Cir. 2011). A plaintiff must make two showings to state a claim for deprivation of substantive due process in the context of public employment: "'(1) that he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious.'" *Id.* (quoting *Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993)). The guarantee of substantive due process "does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *County of Sacramento v. Lewis*, 523 U.S. 833, 848, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998). Thus, typical state law torts, such as negligence, do not implicate the Due Process Clause. *Id.* at 849; *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 129, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992).

Rather, the official's conduct must "be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 867 (5th Cir. 2012). The Fifth Circuit described the requisite conduct:

> Conduct sufficient to shock the conscience for substantive due process purposes has been described in several different ways. It has been described as conduct that violates the decencies of civilized conduct; conduct that is so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency; conduct that interferes with rights implicit in the concept of ordered liberty; and conduct that is so egregious, so outrageous, that it may be fairly said to shock the contemporary conscience. Many cases that have applied the standard have involved the use of extreme force by police officers or other state actors. . . . [T]he burden to show state conduct that shocks the conscience

10

> is extremely high, requiring stunning evidence of arbitrariness and caprice that extends beyond mere violations of state law, even violations resulting from bad faith to something more egregious and more extreme.

*Id.* at 867-68 (citations and punctuation omitted).

Plaintiff has not pleaded facts to meet the standard of conduct necessary to state a substantive due process claim. Plaintiff alleged that Defendants fired him and refuse to rehire him because of his protected speech activity. Plaintiff has not cited any case law indicating that these facts are egregious enough to implicate substantive due process.

Moreover, a plaintiff asserting a due process claim must allege that he was deprived of a legitimate entitlement – a life, liberty, or property interest protected by the Fourteenth Amendment. *Lewis*, 665 F.3d at 630. Property interests may be "created and defined by existing rules or understandings that stem from an independent source such as state law." *Wilson v. Birnberg*, 667 F.3d 591, 598 (5th Cir. 2012). Under Mississippi law, "where there is no employment contract . . . the relation may be terminated at will by either party," and the employee possesses no protected interest in his employment. *Levens v. Campbell*, 733 So. 2d 753, 763 (Miss. 1999). Plaintiff did not allege that he had an employment contract, or any other facts indicating he had a protected property interest in his employment. Accordingly, he has not alleged facts which demonstrate that Defendant deprived him of a legitimate entitlement.

## IV. CONCLUSION

For the reasons provided above, the Court **grants in part and denies in part** Defendants' Motion to Dismiss [3]. Specifically, the Court grants the motion as to Plaintiff's failure-to-train and due process claims. The Court denies the motion in all other respects.

SO ORDERED AND ADJUDGED this 10th day of June, 2019.

                                          /s/     Keith Starrett
                                                     KEITH STARRETT
                                   UNITED STATES DISTRICT JUDGE